**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

---

DEBRA ANDA,

                 Plaintiff,

v.

WICKES FURNITURE COMPANY,
INC.,

                 Defendant.

Civil No. 05-1768 (JRT/FLN)

**MEMORANDUM OPINION
AND ORDER GRANTING
DEFENDANT'S SUMMARY
JUDGMENT MOTION**

---

Adam A. Gillette and Steven Andrew Smith, **NICHOLS KASTER & ANDERSON, PLLP**, 4600 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, for plaintiff.

Gina K. Janeiro and Thomas E. Marshall, **JACKSON LEWIS LLP**, 150 South Fifth Street, Suite 1450, Minneapolis, MN 55402, for defendant.

Plaintiff Debra Anda is a former employee of defendant Wickes Furniture Company, Inc. ("Wickes"). Anda alleges that she was forced to resign from Wickes because repeated sexual harassment by her co-workers created a hostile work environment in violation of Title VII and the Minnesota Human Rights Act. This action is before the Court on Wickes' motion for summary judgment. For the reasons set forth below, the Court grants Wickes' motion for summary judgment.

**BACKGROUND**

Plaintiff Anda worked for Wickes as a part-time salesperson between September 2001 and September 2003. Anda alleges that she was subjected to sex discrimination at

Wickes beginning in early 2002, and that several of her former co-workers sexually harassed her between fall 2002 and summer 2003.  Specifically, Anda claims she was subjected to sexual comments about her daughter, inappropriate hugging and touching, and sexual innuendo and epithets made by her co-workers.

According to Anda, in August 2003 Wickes' store manager Dave Bruber made inappropriate sexual comments to her.  Anda alleges that Bruber told her that two women in Edina wanted to "make a sandwich" out of him.  (Anda Dep. at 204.)  Later that day, Bruber allegedly told Anda that he had been wrongly accused of sexual harassment in another Wickes' store, and that "if it came down to one of them leaving, he told the woman it wouldn't be him."  (*Id.*)

In September 2003, tensions developed between Anda and several of her co-workers regarding customer assignments and customer "stealing."  On September 6, 2003, one of Anda's co-workers, Ryan Carlson, accused Anda of calling him a "Leviathon" after a dispute over customer stealing.  Carlson called Bruber the next day to complain about Anda's behavior.  Anda allegedly told Bruber that Carlson should also be subject to discipline because Carlson had made inappropriate comments to her in the past.  Specifically, Anda told Bruber that Carlson is "aggressive and makes inappropriate comments, he's got a temper, he lies, he switches blame and says that I do things that he does . . . ."  (*Id.* at 231.)  Anda also told Bruber that Carlson had made a comment about her buttocks.

Carlson later made a formal complaint to Wickes regarding Anda's Leviathon comment.  Carlson's complaint resulted in a written reprimand to Anda on September 15,

2003 from Bruber and Jamie Lambert, the assistant store manager. Anda responded that she intended to compile her own list of complaints against Carlson. On September 20, 2003, Anda gave Bruber and Lambert a letter detailing eleven incidents involving Carlson that occurred between July and September 2003. Three of the incidents involved behavior that could be categorized as inappropriate sexual comments or conduct. Specifically, Anda reported that Carlson made reference to a "strap on" during conversation with Anda and another salesperson in July 2003; that Carlson kicked Anda in the back of the leg on August 23, 2003; and that Carlson had commented that Anda had a "large butt" on September 6, 2003. (Pl.'s Ex. 16.) The remaining incidents related to other interpersonal conflicts between Wickes' salespeople. On September 21, 2003, Wickes issued a written reprimand to Carlson. The letter to Carlson warned that any further harassment would result in a written warning or dismissal. Bruber and Lambert met with Carlson for 20-30 minutes, and told both Carlson and Anda to put the incident behind them.

On September 27, 2003, Anda was involved in a dispute with another fellow co-worker regarding potential customer assignments. In response to this dispute, Wickes held a meeting on September 28, 2003 regarding the store's customer assignment policy. Bruber held an additional meeting on the morning of September 29, 2003 regarding the dispute between Anda and her co-worker. Following the meeting, Anda informed Bruber that she was submitting her two-week resignation. That afternoon, Anda and Carlson were involved in another dispute over customer assignments. According to Anda, Carlson told her "you better fucking turn those customers over to me right now or I'm

going to kick your fucking ass." (Anda Dep. at 100.)  Anda immediately reported the incident to Bruber.  Anda alleges that Bruber asked Anda if she had any witnesses, and told Anda that Carlson would not be working at Wickes much longer.  Anda worked the remainder of her shift and left Wickes that evening.

On September 30, 2003, Anda called Lambert to tell her she would not be returning to work.  According to Wickes, Lambert asked Anda to reconsider her decision. Anda told Lambert she could not work at Wickes because it was not safe.

Anda sent a letter to Wickes' Vice-President of Human Resources on October 3, 2003.  Anda wrote that despite Wickes' efforts to resolve her disputes with Carlson, she had decided to resign.  Anda also noted that she had enjoyed working with Bruber and Lambert.  Wickes subsequently made several efforts to retain Anda as an employee, and informed Anda that Carlson had been fired in mid-October.  However, Anda refused to reconsider her decision to resign.

Anda sent another letter to Wickes' corporate human resources on October 15, 2003.  In this letter, Anda made additional allegations of sexual harassment.  Specifically, Anda alleged that she had informed Lambert on September 16 that Carlson had made an inappropriate sexual comment to her.  Anda also reported that she had been told that Carlson was telling co-workers that Anda was making up stories about sexual harassment.

On March 11, 2004, Anda file a charge of sex discrimination against Wickes with the Minnesota Department of Human Rights ("MDHR"), which was cross filed with the Equal Employment Opportunity Commission ("EEOC").  The MDHR found no probable

cause to support Anda's discrimination claim, and issued its order dismissing Anda's charge on April 15, 2005.  Specifically, the MDHR found insufficient evidence that Anda had complained of the sexual harassment until September 20, 2003.  The MDHR order stated that Anda could bring a civil action against Wickes within 45 days of the decision.  The MDHR denied Anda's appeal of the order on May 17, 2005.

On May 31, 2005, the EEOC adopted the findings of the MDHR.  The EEOC notice provided that Anda would have 90 days to file suit in state or federal court from the date of the notice.  Anda brought this lawsuit against Wickes on August 11, 2005, alleging sexual harassment under Title VII of the Civil Rights Act of 1964 and the Minnesota Human Rights Act.[1]  42 U.S.C. § 2000-e; Minn. Stat. § 363A.

## ANALYSIS

### I.   STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all

---

[1] Plaintiff also raised a third claim of constructive discharge for the first time in her Memorandum in Opposition to Defendant's Motion for Summary Judgment.

reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.      ANDA'S HOSTILE WORK ENVIRONMENT CLAIM UNDER TITLE VII

A hostile work environment claim must show 1) membership in a protected group, 2) the occurrence of unwelcome harassment, 3) a causal nexus between the harassment and her membership in the protected group, 4) that the harassment affected a term, condition, or privilege of employment, and 5) that the employer knew or should have known of the harassment and failed to take prompt remedial action.  *Meriwether v. Caraustar Pkg. Co.*, 326 F.3d 990, 993 (8th Cir. 2003).  A hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive" to alter the conditions of employment. *Id.* Even assuming that Anda is able to show a genuine issue of material fact as to the first four elements of her Title VII claim, the Court finds that Anda's claim must fail because she has presented no genuine issue of material fact that her employer knew or should have known of the harassment.

Anda must show that Wickes knew or should have known about the harassment and failed to take prompt remedial action.  *Stuart v. Gen. Motors Corp.*, 217 F.3d 621, 633 (8th Cir. 2000).  In assessing the reasonableness of an employer's remedial action, the Eighth Circuit considers factors including the amount of time between the notice and the remedial action, the options available to the employer, and whether or not the remedial measures ended the harassment.  *Carter v. Chrysler Corp.*, 173 F.3d 693, 702 (8th Cir. 1999).  The Court finds that Anda has produced insufficient evidence to create a genuine

issue of material fact as to whether Wickes knew or should have known about the alleged harassment. Wickes was unaware of any of the alleged harassment until September 20, 2003, when Anda gave Bruber and Lambert a letter detailing eleven incidents involving Carlson, the majority of which involved interpersonal conflicts unrelated to sexual harassment. Wickes' management issued a written reprimand to Carlson the next day, warning him that any further harassment would result in a written warning or dismissal. It is undisputed that Anda made no additional complaints until she resigned on September 29, 2003. Following her resignation, Wickes' management asked Anda on two occasions to consider returning to work, informed Anda that Carlson had been terminated in mid-October, and conducted an investigation into the allegations of sexual harassment. As such, the Court finds that Anda has failed to show that Wickes' knew or should have known of the alleged harassment prior to September 20, 2003. The Court further finds that Wickes took prompt remedial action by disciplining and eventually firing Carlson, offering Anda her job back, and conducting an investigation into the allegations.

Anda argues that knowledge of harassment should be imputed to Wickes because Bruber, a store manager, was involved in the harassment. However, Anda has produced no evidence, apart from her own affidavit, suggesting that Bruber engaged in any of the harassing conduct. *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir. 1994) (finding summary judgment appropriate in Title VII discrimination claim where plaintiff failed to adduce independent evidence of disparate treatment other than his own unsubstantiated deposition testimony). Indeed, the evidence shows that Anda lauded the actions of Bruber and Lambert in attempting to reconcile an intractable

CASE 0:05-cv-01768-JRT-FLN   Document 47   Filed 01/16/07   Page 8 of 10

conflict between Anda and Carlson. Moreover, Anda failed to report Bruber's alleged harassment in her subsequent complaints to Wickes' senior management. The Court further finds that Anda's allegations of harassment against Bruber are insufficient to impute knowledge of a hostile work environment to Wickes. *Cf. Burns v. McGregor Elec. Indus., Inc.*, 955 F.2d 559, 564 (8th Cir. 1992) (finding that defendant manufacturer knew of harassment because owner asked plaintiff for sex in exchange for overtime pay, relied on the harassment of other managers to further his own harassment of plaintiff, and threatened to fire plaintiff if she refused his advances). As such, the Court grants Wickes' motion for summary judgment on Anda's Title VII claim.

## III.    ANDA'S MHRA CLAIM

Wickes argues that Anda's MHRA claim is barred under the applicable statute of limitations. Minnesota law requires a party to file a MHRA claim within 45 days of receipt a decision from the MDHR. Minn. Stat. § 363A.33, subd. 1(2). Wickes asserts that the MDHR reaffirmed its initial dismissal of Anda's MHRA claim on May 17, 2005. Anda brought this action in federal court on August 11, 2005. The Court agrees that Anda's MHRA claim is barred by the statute of limitations because it was filed more than 45 days after receipt of the MDHR decision. As such, the Court finds that there is no genuine issue of material fact as to the MHRA claim. Accordingly, the Court grants Wickes' motion for summary judgment on this claim.

- 8 -

**IV.     ANDA'S CONSTRUCTIVE DISCHARGE CLAIM**

Anda argues that she was constructively discharged because working conditions at Wickes were so intolerable that she was forced to quit.  A constructive discharge claim must show that the "employer renders the employee's working conditions intolerable, forcing the employee to quit."  *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1159 (8th Cir. 1999).  To establish a constructive discharge claim, a plaintiff must show more than just a Title VII violation by her employer.  *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir. 1998).  Rather, the plaintiff must show that the employer deliberately created intolerable working conditions with the intention of forcing the employee to quit.  *Breeding*, 164 F.3d at 1159.

Anda has not put forward sufficient evidence to support her contention that Wickes deliberately created hostile working conditions with the intention of forcing Anda to quit.  In fact, Anda praised the efforts of Wickes' managers in attempting to resolve the problems with Carlson.  In addition, Anda resigned suddenly without giving Wickes a sufficient opportunity to remedy the alleged harassment.  *See West v. Marion Merell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995) (stating that an employee who quits without giving her employer a reasonable opportunity to work out the problem is not constructively discharged).  For these reasons, the Court finds that Anda has presented no genuine issue of material fact to support her constructive discharge claim.

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that defendant's motion for summary judgment [Docket No. 33]

is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:    January 16, 2007                         s/ John R. Tunheim         _
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                        United States District Judge